UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
D'WAYNE CARPENTER,            )
                              )
            Petitioner,       )
                              )
v.                            )   Civil Action No. 04CV40043WGY
                              )
DAVID L. WINN, et al.         )
                              )
            Respondent.       )
_____)
```

## MEMORANDUM OF LAW IN SUPPORT OF
## RESPONDENT WARDEN WINN'S MOTION FOR SUMMARY JUDGMENT

### Introduction

Petitioner D'Wayne Carpenter has filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against the respondent, David L. Winn, Warden, the Federal Medical Center in Devens, Massachusetts ("FMC Devens").[1] He challenges the decision by the Bureau of Prisons regarding his placement in a Community Corrections Center ("CCC") (halfway house), or Home Confinement ("HC"), by alleging that he was eligible for a placement on his 10% date, which is equivalent in his case to a six-month placement, but instead is not getting that placement due to medical reasons. As relief, Petitioner seeks an order directing the BOP to "follow {sic} it's own policy" and to place him in a CCC or HC. (See **Petition**, p.5.)

Pursuant to Fed. R. Civ. P. 56(c), summary judgment should enter in Respondent's favor for the following four reasons: First, Petitioner's request for immediate CCC or HC placement is

---

[1]     Although the Petition lists {sic} "David Winn, et al." as the respondent(s) in this action, there is no other indication as to who Petitioner seeks to name as a respondent.

not the proper subject of a habeas corpus petition.  <u>Second</u>, pursuant to 18 U.S.C. § 3624(c), the Bureau of Prisons ("BOP") has the discretion not to allow an inmate to receive pre-release community custody.  <u>Third</u>, there is no protected liberty interest in CCC placement.  <u>Fourth</u>, Petitioner's habeas petition should be dismissed for failure to exhaust his available administrative remedies prior to filing suit.  Accordingly, summary judgment should be granted to Respondent as a matter of law.

**Statement of Material Facts Pursuant to Local Rule 56.1**

In accordance with Local Rule 56.1, Respondent herein sets forth a "concise statement of the material facts of record" and contends that there is "no genuine issue to be tried."  <u>See</u> L.R. 56.1 (2004).

Petitioner Dwayne A. Carpenter, Reg. No. 05823-016, is a federal inmate who is currently incarcerated at FMC Devens.[2]  On July 14, 1998, he was sentenced in the District of Columbia, Superior Court, to a seven (7) to twenty-one (21) year term of incarceration for Armed Robbery, a violation of District of Columbia Code 22-2901, 3202.  Petitioner's Projected Release Date on this sentence, via Parole, is October 16, 2004.  His Pre-Release Preparation Date (or 10% date) is April 16, 2004.  Petitioner's full term expiration date is October 27, 2017.  (<u>See</u> **Attachment A** - Public Information Inmate Data, and **Attachment B** - Sentence Monitoring Computation Data, attached to **Exhibit 1** - Declaration of FMC Devens Attorney Advisor Patrick Ward ("Ward Decl.")).

---

[2] Following Petitioner's commitment to the custody of the BOP on February 6, 2001, he was initially designated to the Federal Correctional Institution at Allenwood, Pennsylvania ("FCI Allenwood").  He was subsequently redesignated to FMC Devens on August 12, 2003.

During Petitioner's incarceration at both FCI Allenwood and FMC Devens, periodic Program Reviews were completed with Petitioner, his Case Manager, and his Unit Manager. (See **Attachments C - N**.) The recommendation for an inmate to a CCC typically does not occur until the inmate is within 11 to 13 months of his projected release date. (See **Attachments C - F**.) Subsequent to the granting of a presumptive parole date of October 16, 2004, on August 29, 2003, at his first Program Review at FMC Devens, Petitioner was advised that his case was being reviewed for a potential placement to a CCC for a date no earlier than April 16, 2004 (which coincides with his 10% or six month date). (See **Attachments G - I**.)

On November 20, 2003, an Institutional Referral for CCC Placement request was initiated by Petitioner's Unit Team at FMC Devens. (See **Attachment K** - November 2003 Institutional Referral for CCC Placement.) On December 2, 2003, Petitioner received a tentative CCC placement to Hope Village in Washington, D.C., for a placement date of April 20, 2004. (See **Attachment L -** CCC (Hope Village) Tentative Acceptance Letter.) At the time of this initial referral, as well as the time of this acceptance, Petitioner was not on dialysis. (See **Exhibit 2** - Declaration of FMC Devens Medical Officer Dr. Alcia Williams ("Williams Decl.")). In December 2003, Petitioner began receiving dialysis treatments at FMC Devens three (3) times a week. (See Williams Decl.) This treatment continues through the present. It was this change in medical condition and treatment that resulted in a change in the ability of the CCC's to handle Petitioner's case.

Although Petitioner was previously provided a tentative date for CCC placement through the Community Corrections Management ("CCM") field office in Baltimore, Maryland, due to his change in medical condition, on March 17, 2004, Unit Team staff at FMC Devens were

3

notified by the CCM office that his tentative CCC placement date to Hope Village had been changed to June 16, 2004.  (See **Attachment M** -  March 2004 Change in CCC Date.)  This change was administered by the BOP CCM's Office based upon their discovery of Petitioner's change in medical condition from the initial approval.  (See **Exhibit 3** - Declaration of Regional Community Corrections Administrator King-Wessels ("King-Wessels Decl.")).

As of March 17, 2004, Petitioner was still tentatively scheduled for a CCC placement on or about June 16, 2004.  However, between March and May 2004, Petitioner was seen by a Cardiologist and subsequent testing resulted in a recommendation for a cardiac catheterization. See Williams Decl.  As a result, Petitioner was no longer medically cleared to a pre-release placement. On June 23, 2004, a cardiac catheterization was completed on Petitioner at the University of Massachusetts Medical Center.  Subsequently, Petitioner was medically cleared to once again be considered for a pre-release placement.  Id.

On or about June 30, 2004, Petitioner's Unit Team at FMC Devens once again completed an Institutional Referral for CCC Placement form.  (See **Attachment P** - June 2004 Institutional Referral for CCC Placement.)  On this occasion, the recommendation to the CCM Office in Annapolis Junction, Maryland, suggested a placement to HC and sought a date sometime on or after July 26, 2004.  Id.  This referral was received in the CCM's Office on or about July 12, 2004.

Subsequent to the Unit Team's submission of the second CCC referral, Petitioner again developed further medical complications.  (See Williams Decl.)  On July 8, 2004, it was determined that Petitioner had a clotted AV graft, which is necessary for the dialysis treatments. That day he was admitted to the University of Massachusetts Medical Center for treatment and

was released back to FMC Devens on July 9, 2004. Id. However, on July 13, 2004, further issues arose with the clotting of the AV graft, which resulted in Petitioner's admission to the University of Massachusetts for vascular surgery on the AV graft site on July 14, 2004. Petitioner returned to FMC Devens on July 15, 2004, following completion of his left AV graft revision surgery. Id.

The CCM's office in Baltimore, which handles pre-release placements within the District of Columbia, initiated its effort on or about July 12, 2004, to coordinate an HC or a CCC placement for Petitioner. (See King-Wessels Decl.) As a result of Petitioner's medical status, which includes ongoing dialysis treatment, the CCM's Office was unable to coordinate an acceptance of his case with any of the available CCC's in the District of Columbia area. Based upon the practice and policy of HC placements in the D.C. area, an inmate cannot be placed directly into an HC placement, as he must first be accepted by a CCC. Therefore, the BOP is unable to locate any pre-release placement option for Petitioner within the D.C area. Id.

*Administrative Remedy History*

A review of Petitioner's Administrative Remedy Record revealed that Petitioner filed a Request for Administrative Remedy, Case Number 330468-F1, on or about April 6, 2004. (See **Attachment R**; see also **Attachment Q** - Administrative Remedy History.) This request raised Petitioner's eligibility for his original six-month placement to a CCC. Petitioner's Request was denied by Respondent, Warden Winn, on or about May 18, 2004. Id. Subsequently, on or about May 27, 2004, Petitioner filed a Regional Administrative Remedy Appeal, Case Number 330468-R1, to the Bureau of Prisons' Regional Director in Philadelphia. (See **Attachment S**.) Petitioner's appeal was denied by the Regional Director on or about June 24, 2004. Id. In that

5

response, the Regional Director explained that due to the change in Petitioner's medical condition, the original CCC placement was rescinded and that medical concerns are a proper basis to postpone or rescind a CCC placement.  Id.  Petitioner subsequently filed a Central Office Administrative Remedy Appeal, Case Number 330468-R1, to the BOP Central Office in Washington, D.C, on or about July 19, 2004.  (See **Attachment T**.)  At the time of this declaration, the BOP Central Office has not yet filed a Response to that Appeal.  A response is not due until on or about August 28, 2004.

## Legal Argument

**I.    Summary Judgment Should Enter In Favor Of The Respondent Because: (i) Petitioner's Request For Immediate CCC Or HC Placement Is Not The Proper Subject Of A Habeas Corpus Petition; (ii) The BOP Has The Discretion Not To Allow An Inmate To Receive Pre-Release Community Custody; And (iii) There Is No Protected Liberty Interest In CCC Placement.**

   A.   *Petitioner's Request For Immediate CCC Or HC Placement Is Not The Proper Subject Of A Habeas Corpus Petition.*

As an initial matter, Petitioner is not entitled to collateral relief pursuant to 28 U.S.C. § 2241 or § 2255.  Section 2241 provides that a writ of habeas corpus may be granted to a prisoner, inter alia, "in custody in violation of the Constitution or laws or treaties of the United States."  Id. § 2241(c)(3).  Section 2255 provides that:

> [a federal prisoner] claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court in which the sentence was imposed to vacate, set aside, or correct the sentence.

Petitioner does not claim that he is unlawfully in BOP custody.  Nor does he claim the right to be released from that custody.  Likewise, he does not contend that his sentence was

imposed in violation of federal law or the Constitution, that the court lacked jurisdiction to impose the sentence, or that his sentence exceeds the maximum authorized by law. And, finally, he does not argue – nor could he – that BOP lacks the authority to choose the facility in which he will serve his term of imprisonment. See 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."); see also, e.g., United States v. Serafini, 233 F.3d 758, 778 n.23 ("A district court has no power to dictate or impose any place of confinement for the imprisonment portion of the sentence."); accord United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995). Cf. McKune v. Lile, 122 S. Ct. 2017, 2027 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

      Rather, Petitioner's claim is that BOP has unfairly delayed his placement to a CCC (halfway house) or to HC. That claim is mistaken. Even assuming BOP has the discretion to house Petitioner in a CCC sooner, that discretion would not establish that his placement in a federal prison facility is "in violation of the Constitution or laws or treatises of the United States," as required for collateral relief. 28 U.S.C. § 2241(c)(3); see also 28 U.S.C. § 2255. In Petitioner's case, the Court sentenced him to a term of imprisonment; Petitioner's subjective expectation that he would be housed in a CCC or receive HC does not entitle him to collateral relief under Section 2241 or Section 2255. Accordingly, Petitioner's habeas petition should be denied in its entirety.

B.  *Pursuant To 18 U.S.C. § 3624(c), The BOP Has The Discretion Not To Allow An Inmate To Receive Pre-Release Community Custody. Notwithstanding This Fact, The BOP Has, "To The Extent Practicable," Attempted To Place Petitioner In A Pre-Release Placement In Accordance With § 3624(c).*

The authority to place federal defendants at any particular institution is vested in the BOP pursuant to Title 18, United States Code, §3621. Upon imposition of sentence, federal defendants are remanded to the custody of the BOP (formerly the Attorney General), which designates the place of confinement and may direct transfers between institutions. Title 18, U.S.C., § 3621(b). In so doing, "the range of factors that the Bureau may consider in its assignments is almost illimitable". United States v. Smith, 27 F.3d 649, 655 (D.C.Cir. 1994).

Federal law provides for the placement of federal prisoners in non-prison sites such as halfway houses shortly before the conclusion of their sentences to allow the prisoners an opportunity to adjust to the community prior to their release. This "pre-release custody" is governed by 18 U.S.C. § 3624(c), which provides to the extent practicable that such placement will take place during the last ten percent of a prisoner's sentence, not to exceed six months[3].

---

[3] Prior to December 2002, the BOP had placed some prisoners with considerable community transitional needs in halfway houses for the last six months of their sentences, regardless of the length of their sentences, even after this statute was enacted as part of the Sentencing Reform Act of 1984, Pub. L. 98-473, effective November 1, 1987. That practice ended in December 2002, in response to guidance from the Department of Justice ("DOJ"). On December 13, 2002, DOJ's Office of Legal Counsel ("OLC") issued a memorandum opinion indicating, among other things, that BOP must comply with § 3624(c) when placing prisoners in pre-release custody. The OLC memorandum stated:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section. The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period "not to exceed six months, of the last 10 per centum of the time to be served," 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation.

The Petitioner now seeks pre-release custody pursuant to Title 18, United States Code, §3624(c), entitled "Pre-release Custody".[4] Specifically, the Petitioner seeks HC, or a period of assignment to a halfway house followed by HC. The Petitioner's claim appears to rest on his belief that he has a statutory right to pre-release community custody. This is not correct. Although the statute appears to be mandatory, as asserted by the Petitioner, it is clear that the statute is actually permissive and that no such statutory right is found. Specifically, Title 18, U.S.C. § 3624(c), states that:

> The Bureau of Prisons **shall, to the extent practicable, assure** that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody. (Emphasis added).

It is clear that this statute gives the BOP the discretion of allowing a prisoner to serve any time period up to, but not beyond, six months of the last ten per centum of his sentence in a facility "that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community." It does not require that a prisoner be afforded all of the six-month period in such a facility, U.S.A. v. David Gutierrez, 1994 WL 174488, No. 94-0167 (E.D.Pa.,

---

See Memorandum Opinion for the Deputy Attorney General, Dated December 13, 2002 ("OLC Opinion"). The OLC Opinion addressed the Bureau of Prisons' authority to, at any other time, transfer a prisoner to community confinement pursuant to 18 U.S.C. § 3624(c)'s pre-release custody provision. The OLC Opinion is published at the Department of Justice, OLC's website, and may be accessed at the following link:
www.usdoj.gov/olc/2002opinions/bopimprisonment2.htm.

[4] This statutory provision was enacted as part of the Sentencing Reform Act of 1984.

filed May 3, 1994), or "that all prisoners participate in such a program, but only do so if practicable." United States v. Restrepo, 999 F.2d 640, 645 (2nd Cir.), cert denied, 510 U.S. 954 (1993). Nor does this statutory provision "mandate that all prisoners pass through a community treatment center en route to free society". United States v. Laughlin, 933 F.2d 786, 789 (9th Cir. 1991).

Under the present statute, 18 U.S.C. § 3624, the discretion to determine if a prisoner, such as Petitioner, may participate in community programs (§§ 3622 and 3624(c)) has been retained and specifically conferred in the BOP. United States v. Laughlin, 933 F.2d 786 (9th Cir. 1991). The placement of an inmate in a halfway house is an outgrowth of the Bureau's broad discretion of determining the location of incarceration. United States v. Jalili, 925 F.2d 889 (6th Cir. 1991). The BOP is vested with broad discretion in deciding whether a prisoner is to be assigned to a community program. See Fernandez-Collado v. INS, 644 F.Supp. 741 (D.Conn. 1986), aff'd, 857 F.2d 1461 (2d Cir. 1987). Cf. Paulino v. Connery, 766 F.Supp. 209 (S.D.N.Y. 1991).

The language of Section 3624(c) **permits** the BOP, "to the extent practicable," to place a prisoner in a halfway house up to a maximum of six months; it **does not mandate** a six-month CCC placement for any prisoner. As long as the conditions or degree of confinement fall within the sentence imposed and do not otherwise violate the Constitution, the Due Process Clause does not bring the prisoner's custody status within the purview of judicial scrutiny. See Montanye v. Haymes, 427 U.S. 236, 242, 96 S.C. 2543, 49 L.Ed.2d 466 (1976). In this instance, Petitioner does not suffer an atypical or significant hardship in the context of prison life merely by serving his sentence within the institution he was designated to.

10

In addition to the statute, the BOP has issued a Program Statement, which is an internal agency guideline, for addressing pre-release community custody requests. Specifically, Program Statement 7310.04, entitled *Community Corrections Center (CCC) Utilization and Transfer Procedures* (December 16, 1998), addresses CCC referrals and procedures. (See **Attachment U** - PS 7310.04 *Community Corrections Center (CCC) Utilization and Transfer Procedures*, in relevant part.) This internal agency guideline, which is akin to an "interpretive rule" that "does not require notice and comment" (Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99 (1995)), is still entitled to some deference, cf. Martin v. Occupational Safety and Health Review Comm's, 499 U.S. 144 (1991), since it is a "permissible construction of the statute," Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984). See Reno v. Koray, 515 U.S. 50 (1995). See also Gambino, supra. In this case, the Program Statement is permeated with discretionary language.

Within PS 7310.04, it clearly indicates that a limit on eligibility for a CCC referral is an inmate who requires inpatient medical treatment. (See **Attachment U**, p. 10, § 10(a)). It follows, then, that the implementation of CCC placements within the District of Columbia would have a standard practice of not accepting inmates who require hospital visits for dialysis three times a week. (See Williams Decl. and King-Wessels Decl.) Additionally, this point is further exemplified by the ongoing and chronic medical issues Petitioner has had in the time between the initial CCC placement consideration and today. (See Williams Decl.) It therefore follows that the BOP, through its continued effort to review Petitioner's case and find a CCC placement for him, has "to the extent practicable" attempted to place him in a pre-release placement under § 3624(c). As Respondent has fulfilled his statutory obligation to Petitioner under that statute,

Petitioner's habeas petition should be denied in its entirety.

      C.    *There Is No Protected Liberty Interest In CCC Placement.*

It is well established that federal prisoners do not have a protected liberty interest in halfway house placement, and the BOP has complete and absolute discretion in the determination of halfway house placement. United States v. Laughlin, 933 F.2d 786 (9th Cir. 1991); United States v. Jalili, 925 F.2d 889 (6th Cir. 1991); Pugliese v. Nelson, 617 F.2d 916, 923-925 (2d Cir. 1980); 18 U.S.C. §§ 4081, 4082. See Fernandez-Collado v. INS, 644 F.Supp. 741 (D.Conn. 1986), aff'd, 857 F.2d 1461 (2d Cir. 1987). Cf. Paulino v. Connery, 766 F.Supp. 209 (S.D.N.Y. 1991). The BOP has discretion to determine whether an inmate is eligible for early release. Lopez v. Davis, 531 U.S. 714, 121 S.C. 714 (2001); 18 U.S.C. § 3621(e)(2)((B). Additionally, Section 3624 itself has been held to be an "administrative provision" governing the release of adult prisoners from federal detention, rather than a statement of defendants' rights. United States v. Morales-Morales, 985 F.Supp. 229, 231 (D.P.R. 1997); United States v. Doe, 53 F.3d 1081, 1083 (9th Cir. 1995).

In the case of Gambino v. Gerlinski, 96 F.Supp 2d 456 (M.D.P.A. 2000), aff'd, 216 F.3d 1075 (3rd Cir. 2000), an inmate at a Federal Correctional Institution made a similar challenge to the denial of any placement to a CCC or HC. In that case, Gambino challenged the refusal of the BOP to place him in such a pre-release placement for some portion of the last 10% of his sentence on the grounds that such a refusal violated both 18 U.S.C § 3624(c) and his 5th Amendment due process rights. The Gambino Court held that the refusal to bestow any benefit described under § 3624 (c) falls within the scope of Supreme Court precedent and such a refusal for any pre-release placement does not amount to a violation of an inmate's due process

12

rights. 96 F.Supp 2d 456. On the issue of whether § 3624 (c) is violated, or somehow grants a liberty interest, the Court went on to say:

> In order for a statute to confer a liberty interest it must be "explicitly mandatory" and provide for "specified substantive predicates" which dictate a substantive result. A statute which expresses non-binding procedural guidelines alone does not create a protectable interest.

Gambino, 96 F.Supp 2d 456 (citations omitted). In deciding whether § 3624(c) "dictates a substantive result, or merely expresses non-binding guidelines," the Court held, "Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period. Each district court which has addressed the issue has reached the same conclusion. Id. (Citations omitted). Therefore, § 3624(c) does not create a liberty interest because it does not set mandatory procedures, but instead is a broadly worded statute which sets forth a general policy to guide the BOP. Id. Accordingly, Petitioner's habeas petition should be denied in its entirety.

II. **The Petition Should Be Dismissed For Petitioner's Failure To Exhaust His Available Administrative Remedies.**

The claim by Petitioner challenging the ability of the BOP to place him in a CCC (halfway house) is not properly before this Court because Petitioner has failed to exhaust the BOP's administrative remedies available to him. A review of available records indicates that Petitioner has not fully exhausted these remedies, as he has not received a Response to his Appeal from the BOP Central Office. (See **Attachment Q** - Administrative Remedy History.) Therefore, this petition should be dismissed for failure to exhaust available administrative remedies.

The Prison Litigation Reform Act of 1995, as amended 42 U.S.C. 1997e(a) (PLRA),

13

requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  Porter v. Nussle, 534 U.S. 516, 122 S.C. 983 (2002); Booth v. Churner, 532 U.S. 731, 121 S.C. 1819 (2001).  The exhaustion doctrine "enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."  Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989) (*citing* McKart v. United States, 395 U.S. 185, 194 (1969)).

     Under the Bureau of Prisons Administrative Remedy Program, federal inmates "may seek formal review of an issue which relates to any aspect of their confinement. . . ." 28 C.F.R. § 542.10.  This Program, 28 C.F.R. §§ 542.10 et seq., outlines a three-level grievance procedure to resolve prisoner complaints, and federal inmates must adhere to this procedure before filing lawsuits related to conditions of confinement.  42 U.S.C. § 1997e(a); 28 C.F.R. § 542.10.  In order to exhaust all process under the Administrative Remedy Procedure for Inmates, an inmate must first attempt to informally resolve the dispute with institution staff.  28 C.F.R. § 542.13.  If informal resolution efforts fail, the inmate may raise his or her complaint to the Warden of the institution in which he or she is confined, within 20 days of the date that the basis of the complaint occurred.  28 C.F.R. §§ 542.13, 542.14.  If the Warden denies the administrative remedy request, the inmate may file an appeal with the Regional Director within 20 calendar days of the date of the Warden's response.  28 C.F.R. §§ 542.14, 542.15.  If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel's of the Federal Bureau of Prisons within 30 calendar days from the date of the Regional Director's response.  See 28 C.F.R. §§ 542.14, 542.15.  The administrative remedy process is not

considered to be "exhausted" until an inmate's final appeal is denied by the Bureau of Prisons General Counsel.

Only after the inmate has pursued his grievance through each of the three levels has he exhausted the administrative remedies available to him.  See, e.g., Rogers v. United States, 180 F.3d 349, 357-58 (1st Cir. 1999), cert. denied, 528 U.S. 1126 (2000) (noting that "it is well-established that a request for credit for prior custody . . . must be made, in the first instance, to the Attorney General through the Bureau of Prisons upon imprisonment after sentencing.  Once administrative remedies are exhausted, see 28 C.F.R. § 542.10-542.16, prisoners may then seek judicial review of any jail-time credit determination.") (emphasis added); Irwin v. Hawk, 40 F.3d 347,  349 n.2 (11th Cir. 1994).  After a prisoner has exhausted administrative remedies, if he is not satisfied with the prison's response, he may then seek relief from federal district court.  Id.

The prison regulations "set out the procedures that prisoners must pursue prior to seeking relief in a district court," and make clear that "exhaustion of administrative remedies is jurisdictional."  United States v. Morales-Morales, 985 F. Supp. 229, 231 (D.P.R. 1997) (internal quotations and citations omitted).  See also 42 U.S.C. § 1997e(a) ("No action shall be brought . . . under [42 U.S.C. §1983] or any other Federal law by [an incarcerated prisoner] . . . until such administrative remedies as available are exhausted.")  Thus, if an inmate fails to exhaust available administrative remedies, the Court lacks subject matter jurisdiction over his civil action and it must be dismissed.  See, e.g., United States v. Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989) (prisoner's claim that his pre-sentence custody should have been credited against his sentence was not properly before the court because prisoner failed to exhaust administrative

remedies available through federal prison system before seeking judicial review).

Petitioner has failed to exhaust his available Administrative Remedies on this issue. A review of his Administrative Remedy Record revealed that, while he has utilized the administrative remedy process to file an administrative remedy submission on the issue presented in this Petition with the Respondent, with the Northeast Regional Office of the BOP, and with the Central Office of the BOP, he has failed to exhaust the administrative remedy process by submitting this Petition prior to receiving a response from the Central Office of the BOP. (See **Attachment Q** - Administrative Remedy History.**)**

Petitioner filed a Request for Administrative Remedy, Case Number 330468-F1, on or about April 6, 2004. (See **Attachment R**.) The Request raised Petitioner's eligibility for his original 6 month placement to a CCC. Petitioner's request was denied by Respondent on or about May 18, 2004. Id. Subsequently, on or about May 27, 2004, Petitioner filed a Regional Administrative Remedy Appeal, Case Number 330468-R1, to the BOP's Regional Director in Philadelphia. (See **Attachment S**.) Petitioner's appeal was denied by the Regional Director on or about June 24, 2004. Id. In that response, the Regional Director explained that due to the change in Petitioner's medical condition, the original CCC placement was rescinded and that medical concerns are a proper basis to postpone or rescind a CCC placement. Id. Petitioner subsequently filed a Central Office Administrative Remedy Appeal, Case Number 330468-R1, to the BOP's Central Office in Washington, D.C, on or about July 19, 2004. (See **Attachment T**.) At the time of the filing of this memorandum, the BOP Central Office has not filed a response to

that appeal, and its response is not due until on or about August 28, 2004.[5]  Therefore, Petitioner's habeas petition should be dismissed for failure to exhaust his administrative remedies.

## Conclusion

It is clear that the BOP maintains the authority to determine Petitioner's place of confinement; that the pre-release custody statute is not mandatory; that the BOP exercised its discretion in accordance with the statute and regulations which resulted in denying Petitioner's request; that Petitioner does not have a protected liberty interest at stake; and that Petitioner failed to exhaust his available administrative remedies.  For all of these reasons, Petitioner's habeas petition must be denied and summary judgment should enter in favor of Respondent as a matter of law.

        Respectfully submitted,

        RESPONDENT DAVID L. WINN,
        By his attorney,

        MICHAEL J. SULLIVAN
        United States Attorney

        /s/ Gina Y. Walcott-Torres
By:   Gina Y. Walcott-Torres
        Assistant U.S. Attorney
        John Joseph Moakley U.S.  Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3369

Dated: August 16, 2004

## CERTIFICATE OF SERVICE

---

[5] Moreover, Petitioner's failure to plead complete exhaustion could also be interpreted as an admission requiring dismissal.

This is to certify that I have this 16th day of August 2004, served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

D'Wayne Carpenter (#05823-016), *pro se*, P.O. Box 879, Ayer, MA 01432

/s/ Gina Y. Walcott-Torres
Gina Y. Walcott-Torres
Assistant United States Attorney

**<u>REQUEST FOR WAIVER OF LOCAL RULE 7.1(A)(2) CERTIFICATION</u>**

The undersigned counsel hereby requests a waiver of the requirements of Local Rule 7.1(A)(2). As reasons therefore, she asserts that the plaintiff, who is acting pro se, is incarcerated at the Federal Medical Center in Devens, Massachusetts.

/s/ Gina Y. Walcott-Torres
Gina Y. Walcott-Torres
Assistant United States Attorney